Jeff Mintz on behalf of Appellant Gregory Ross White. I'll keep my comments very brief and reserve time for questions or for rebuttal. There was just a couple of points in the Appellant's reply brief that in my reading it over I felt I was not getting clarity, so I figure members of the panel may not also. One was in attempting to distinguish the Supreme Court case, Musladin, I think that was cited by the appellees, on the issue of the standard to be applied, whether there is a properly decided federal question in the case, Supreme Court precedent. It seems there's some confusion with respect to the standard that applies in a California parole rescission hearing case, as opposed to the evidentiary standard that should be applied by the state. And in my view, appellees want this court to take a decision in McQuillan. In McQuillan, thank you, Your Honor. The sum evidence test. Well, in addition to the sum evidence test, and that's why I raised this case that was raised by the appellee from Musladin, the Supreme Court case. You talk about the AEDPA standard of review? Yes, yes, correct. It seems to me that this court's enunciation that the federal... I think we understand the relationship between AEDPA and our standard of review in this area, so you might leave that to us to work out. Okay. Why don't you, if there's anything you want to say about the parole revocation or rescission that isn't in your brief, you could help us on that. But I... I think other than that, I think the case stands well briefed. All right. Any questions? All right. All right. Thank you. Good morning, Your Honors. Deputy Attorney General Charles Chung with the Respondent Appellee. Good morning. This case, Mr. White's counsel's focused on the evidence supporting the board's decision to rescind Mr. White's parole. But the standard under AEDPA refers to the state court adjudication and whether state court adjudication denying relief was contrary to or an unreasonable application of clearly established federal law. So looking at whether it's contrary to or an unreasonable application of, Mr. White's counsel's argued that it lacks... it fails the sum evidence test. So that would seem to be an argument that it was an unreasonable application of presumably the Superintendent B. Hill standard. So looking at what the unreasonable application of means, and these are cases after McQuion, the Supreme Court explained in early the Packer and Lockyer v. Andrade, that it in light of Supreme Court case law. Not erroneous, not merely or even clear error, but objectively unreasonable. And so when we're looking at this case, this case must be evaluated in terms of whether the state's decision, conclusion to deny relief was objectively unreasonable. And assuming that Hill does apply here, whether it's an So looking at the record, what we have is the grant of parole was done after Mr. White had served 11 years. And during that time, he had multiple disciplinary violations and the board noted that he had substance abuse problems while in prison. He underwent one year of AA treatment and one year of psychotherapy treatment. But the board granted parole at the time. Now at the rescission hearing, well actually at the grant, in terms of the commitment offense, it held him culpable for only one of the two murders for which he was convicted. Now when the board rescinded parole, it Before you get to the rescission, there were several other hearings we came up for review and they still left the parole date in place, correct? Well actually How did that work? Your Honor, those were progress hearings. And the way progress hearings work, they're  It has a future parole date and those progress hearings then look at whether that date should be advanced for credits. Normally those credits aren't applied without a progress hearing. So as far as I recall, I think one of the progress hearings resulted in an advancing of his parole date. But they're not reviewing the parole grant. Now when the, instead of one of the progress hearings, the board decided to vote whether there should be a rescission hearing. And so the board voted to have a rescission hearing and then that's when they re-evaluated the criteria. Now when they voted to have a rescission hearing, what did they rely on? Well that they would follow with the guidelines outlined in the state regulations. Well what was it about the record at that time that suggested that they ought to reconsider? That's not really an issue I'm just curious. I'm trying to understand how they got to the decision to Something prompted them to proceed on to a rescission hearing. Well I can't say for absolutely sure, but looking at what they decided to rely their decision to rescind on, they looked at that Mr. White was culpable. He was convicted of two murders. That he's not culpable for just one murder, but two murders. And that the treatment that he, for substance abuse that he underwent was insufficient in light of the fact that he continued to have substance abuse problems. Well, counsel, I'm not sure I understand the first area that you just raised. As I understood the rescission panels needs to not just disagree, but they need to find something other than disagreement. And they say the 86th panel did not consider the gravity of the offense. What I just heard you say was they found one, he was responsible for one murder, but not two. That certainly seems to imply to me that they considered the gravity of the offense. They came to a conclusion and the rescission panel simply disagreed with the conclusion. Well I think if we're to speculate in terms of how the board considered the state regulations with respect to what is required for rescission, that would seem to be that the board felt that the granting panel did not adequately consider the crimes with respect to his culpability for those crimes. Is the standard that simple disagreement with the granting board is insufficient? Well, the standard, we have to look at EDPA to find out what the standard is. And it's again, objectively unreasonable with respect to Supreme Court law. So if we're looking at what the standard is to be applied here, assuming it is the sum evidence standard, that is, is it an objectively unreasonable application of Superintendent V. Hill? So we have what the board relied on to rescind parole, and then we should compare that with what the Supreme Court found constitutionally sufficient in Hill. And I'm sure the court is well aware of the facts of Hill, but looking at what the court found in Hill, the court relied on, or the court did not evaluate whether the inmates had committed the disciplinary violation, whether they had actually assaulted. The court actually, I think Justice O'Connor, declined to look at whether there was enough evidence to create an inference that the inmates had committed the assault. The court relied only on the fact that the board, the disciplinary board relied on a guard's testimony that he heard a commotion and saw an inmate run away. The problem we're having in this case is you have a granting board going through and discharging its obligations and making a judgment. The rescission board comes along ten years later and said, no, we think you didn't make the right decision. You didn't consider the gravity of the crime. And I think the other one had to do with substance abuse. If you go to the granting board's decision, it is clear that they looked at the gravity of the crime. They examined his disciplinary record up until the point of their 1986 hearing. They looked at the psychological reports and they said, all right, we have looked at all of this information and our judgment is that he should have parole at X date. Ten years later, the rescission board comes along and says, we look at it and they, as the magistrate judge and district court found, the objective statements of why they disagreed and overruled the granting board appear to be not supported by the record that's extant before the granting board. So what do, under superintendent versus, we're not going back to decide the gravity of the offense ourselves. Aren't we looking to see whether or not they discharged the some evidence standard? And we have to look to what they said. And if you look at what they said and you go back to what the granting board itself said, it doesn't sound like, it doesn't stand up very well, does it? Well, your honor, what it is, well, first of all, I think with the standard, it's whether the state's state court denial was objectively unreasonable in light of superintendent V Hill. If superintendent V Hill. It would be objectively unreasonable, for example, would it not? And maybe you disagree. If the rescission board said that the granting board did not look at his substance abuse at all. Accordingly, we look at it and we decide that he is not entitled to parole. You go to the granting board articulated record statement and they consider substance abuse. Now, what do we do with that? I'm overstating the facts here, perhaps, but what would we do with that under your standard of review analysis? Well, again, going back to what the Supreme Court has said, the court would have to look at, was there something more than just error? Was there something more in terms of denying relief in the state court? Was it more than just erroneous to deny relief, to find that the board's rescission was adequately supported by the record? So it's no violation of due process for a rescission board to flat out either lie, mischaracterize, or misrepresent or misunderstand what the granting board's decision was. If we were to speculate in terms of. Not speculate, taking what they objectively said. The board in writing said, the granting board objectively in writing says, we grant parole based on these five factors, all articulated. The rescission board comes along ten years later and says, we deny parole because the granting board did not consider any factors of the five at all. You go back, I'm making the hypothetical even more extreme. Okay, under those circumstances, you compare the board, you compare it with what their characterization is, not going into their mind, just looking at what they said, and the rescission board's flat out contradicted by the granting board's statement of its parole decision. And that's, that's not a denial of due process or. Well with respect to what the rescission board panel did here, it was not their characterization that the granting board didn't consider the offense, but that it was not sufficiently considered with respect to, as it pointed out, it was not an issue of rehabilitation of the inmate, but retributive justice, whether after eleven years to grant a parole date to an inmate, to an individual who had committed a double murder. Was that adequately, was the gravity adequately weighed? Was it adequately considered? And the rescission board, in applying, these are state law standards and not federal constitutional standards, but applying the state law standards, it used, it, if I believe this. Does the state law allow a rescission board to go back and say, the granting board didn't adequately consider the gravity of the offense? That's improvidently granted. Does state law allow that? If a rescission panel believes the granting panel had improvidently granted parole, then under state law, which is, which is obviously more strict than the federal constitutional standard, that the rescission panel can then rescind parole if it felt the grant was improvidently granted. But they would have to, they would have to appoint to something, wouldn't they? Which is what they did here. And they said they didn't adequately consider, but if you go to the record of the granting board, they, it sure looks like they considered the gravity of the offense. They considered it, but it's to what extent did they, they measure and weigh the crime versus the amount of time that had been served at the time. The rescission panel, from their decision, emphasized that he was culpable, he was convicted of two murders. The granting panel emphasized that he only actually shot one, one person and implied that he was not culpable for the second murder. That would suggest then the rescission panel made, made that evaluation. But again, that's under state law. The, a perceived or an alleged violation of state law, as the Supreme Court has said, is not a ground for federal review under AEDPA, even if that was a violation of state law. If, if we're to assume that, that's not a ground for, for relief, for federal relief or federal review under AEDPA, under AEDPA we're looking at the violation of federal constitutional standards. If we're applying Superintendent Vigil to the, to this parole rescission matter, we must look at whether the state court's denial was objectively unreasonable in light of Superintendent Vigil. Here there is more evidence supporting the board's decision here than there was supporting the revocation of credits in Hill. It's, it's an uphill battle to say that it wasn't objectively unreasonable. But it's our position that the, in going back to the Musladin case, that in Musladin the court looked at what for, in terms of whether there was clearly established federal law that applied to a particular factual circumstance, what holding of the Supreme Court required the California court to apply the test in that case. The test in that case was the test for inherent prejudice. And the, the Supreme Court determined that there was no holding of the Supreme Court that required the California court to apply the inherent prejudice test to, to spectator conduct. That was only applicable to, to the prosecutor's conduct or to the state. So you're saying our McQuillan decision has now been called into question by Musladin? Yes, Your Honor. Well, actually. That's what we understood. Okay. Well, we're a panel, so we can't, we have to go by way of. This court has reviewed the, the effect that EDPA has on circuit precedent. And in Duhame v. Ducharme, Crater v. Galazza, and even in, it refers, this court has referred to Musladin as saying the precedential effect of circuit decisions are denied in, under the EDPA analysis. We have other parole cases in the system that predate this one, which test the issue of whether or not Musladin, the impact of Musladin on McQuillan and Hayward, so I don't think you need to go into great length. If you're trying to make the case in this, are you suggesting this panel should reevaluate McQuillan and Hayward? Well, in terms of, in terms of McQuillan, I've been talking about the EDPA standard. The panel in McQuillan did not apply the EDPA standard. At the time, perhaps I think the, the landscape of EDPA was a little cloudier than it is, than it came afterwards. In fact, the early v. Packer and the Andrade cases came in a couple of months after, after the McQuillan, and that really explained what, in particular, applicable to here, what the unreasonable application of EDPA meant, and the McQuillan panel didn't have the benefit of the Supreme Court's opinion in that, in that regard. So, so to that extent, I'm saying, I will say that yes, I, this, the, in terms of how McQuillan evaluated the EDPA standard of review is questionable. Is questionable. Okay, fine. That's before the court. All right. What else? What's your Musladin point, then? How does that differ from that? Well, it, it goes along the same lines in terms of whether a superintendent v. Hill. Okay, fine. Okay. Well, and if I could briefly sum up. Well, go ahead. Sum up. But you're over time. I apologize, Your Honor. No, it's not your fault. We're not asking questions. To summarize, whatever this court deems to be the clearly established federal law of the Supreme Court that applies here, the standard under EDPA is objective, objective and reasonable. We know the EDPA standard. And so, looking at the evidence, I submit that it was not objectively unreasonable for the state court to have denied that. We thought that would be your bottom line. I'm surprised. I apologize for being predictable, Your Honor. Okay, no. You're doing your job. Okay. Thank you. Just a brief comment on the question of what possibly motivated the NBank decision to commence precision proceedings in Mr. White's case. All of the research I've conducted and interviews I've had with people more knowledgeable about the system than I strongly suggest that it was a politically motivated act. It may well be. Let me ask you one. I just have one question to follow up on Judge Fischer's questions of counsel. You know, we recently, there's McQuillan, Sass, Hayward. If our court were in any future case ever to take the position that Hill, the Hill standards not apply in these revocation cases, in these parole cases, either precision or failure to grant or whatnot, that basically wipes out your case, right? I'm not sure it does, Your Honor. We're talking about the attachment of a liberty interest or, it always seems to me there's two parts to the question. If the liberty interest attaches and the heightened liberty interest attaches on the grant of parole, there still has to be a standard for revocation or there isn't a liberty interest. So it would eviscerate the heightened liberty interest among the highest rights afforded by due process if there wasn't some standard to be measured in applying the liberty interest. And that has been the Attorney General's argument throughout the case. They either turn a blind eye to the standard or provide lip service to the standard. Either way, it eviscerates the liberty interest. So if in your question you're suggesting the superintendent versus Hill would not apply, are you suggesting we foresee a time when there is no liberty interest to inmates, incarcerated inmates? My only question was, the argument is that the state has made repeatedly, this is not my first parole case and they repeatedly, just as counsel did here, is that Hill doesn't apply here in the parole context because the Supreme Court has not, Hill arose in the parole revocation, I mean in the disciplinary proceedings, not in a parole setting. Right. And I think that's a crucial distinction because it seems to me that They've been raising, that argument has been, we have multiple cases and we see them Well if We addressed it in SAS but there are other cases, as Judge Fisher said, there are other cases in the pipeline where this issue is being raised again. Maybe, let's look at it this way, if Superintendent V. Hill did not apply in a disciplinary hearing, if that were what came down, maybe, but can you, by that ruling that we're speculating upon, conclude that the same thing could be said of a heightened liberty interest that is a grant of parole. It's very different. So you're saying here, in this particular case where you have the grant of parole that's at stake, where he's achieved the grant, I mean he's achieved a date, that that's different than trying to seek the opportunity to ask for parole to be set. And California case law speaks to that. Okay. Alright. Okay. Thank you. Thank you very much. Thank you counsel. The case argued is submitted. The next case on calendar is Straus v. Sheffield Insurance Corporation.
judges: Fisher, Paez, Robart